## Richmond

RICHARD P. ADAMS V. J. R. K. COWAN, ET ALS.

April 7, 1933.

Present, Campbell, C. J., and Holt, Epes, Gregory and Browning, JJ.

The opinion states the case.

*R. I. Roop* and *V. M. Sowder,* for the appellant.

*W. H. Colhoun, W. J. Henson, Ellett & Phlegar* and *John B. Spiers,* for the appellees.

BROWNING, J., delivered the opinion of the court.

This suit involves the construction of the will of the late Miss Mary C. Cowan of Montgomery county, Virginia.

Miss Cowan died February 5, 1928, seized and possessed of quite a large estate, real and personal, which she undertook to dispose of by testamentary papers, which were duly probated, and which upon an issue *devisavit vel non,* later submitted to a jury, were established, by the jury's verdict, affirmed by the court, as her last will and testament.

This will, consisting of several papers in the handwriting of the testatrix and signed by her, is here set out in full: "April, 1927.

"After any debts are paid I want to give a lot each for house and garden (of usual size) to each of the following: Richard, son of Nannie Bannister, and Henry known as Tyler or Melton; also to Frank Bannister, son of Edna Bannister.

"I want my brother and sister to share equally my interest in the land known as the lower place and containing 770 acres, or more, held by J. R. K. Cowan and Mary C. Cowan.

"I want Howard Scott and Graham Kelly each to have $1,000 if there is any money from sale of coal, and if such money is available, one-tenth of it to go to charitable purposes, before any deductions are made.

"The remainder of entire estate to go to my nephew, Richard Adams.

"MARY CLOYD COWAN.

"April, 1927.

"This is the only paper which I have not intended to destroy.

"M. C. C."

"I, Mary C. Cowan, being of sound mind and memory, do make this my last will and testament as follows:

"(1) I direct that all my debts be paid as soon after my decease as may conveniently may be.

"(2) I give and devise to my nephew, Richard Putnam Adams, all that certain tract or parcel of real estate owned by me, lying and situate in Montgomery county, Virginia, on Tom's creek and the waters thereof, containing 660

acres mentioned and described in a deed executed on the 13th day of December, 1910, by my mother, Mrs. Margaret Kent Cowan, recorded in deed book 60, page 26, in the clerk's office of the Circuit Court of Montgomery county. This same being part of the land inherited by my mother from her father, Jas. R. Kent, and known as the Buchanan Bottoms.

"MARY C. COWAN.

"Witnesses:

"Anna Belle Graham.

"Sarah I. Jones.

"November 15, 1927.

"See Codicil.

"I give a life interest in one-half of the 660 acres to J. G. Kelly.

"Codicil.—I give to Graham Kelly a life interest in one-half of the 660 acre tract described herein.

"(3) In accordance with my mother's wishes, I want my sister, Mrs. Elizabeth Kent Adams, to have an equal portion with my brother in a certain tract containing 775 acres owned jointly by my brother and myself, provided she assumes any obligations which that portion should share by reason of responsibilities he has assumed for my father.

"(4) I would give a lot for house to each of two boys, Richard Melton and Frank Bannister (as promised to their mothers).

"(5) The remainder of my property, if all debts are paid, I wish to go to the relief of the poor, whether in my kindred or not, and through proper channels of the Presbyterian Church.

"I want each part to take a just proportion of debt with the exception of P(3) and (4) that being specified in (3) as an obligation.

"MARY C. COWAN.

"Witness:"

The verdict of the jury was as follows:

"On the issue joined, we, the jury, find for the propo-

nents of the will dated April, 1927, and the will and codicil dated November 15, 1927, and that said testamentary paper executed by the said Mary C. Cowan, dated April, 1927, which is in the words and figures following, to-wit: * * * and that the said testamentary paper and codicil thereto executed by the said Mary C. Cowan on November 15, 1927, and made subsequently to the will of April, 1927, and which is in the words and figures following, to-wit: * * * are the last testamentary papers of the said Mary C. Cowan, and that the said will of April, 1927, as modified by said will and codicil of November 15, 1927, and the will of November 15, 1927, and codicil, is the last will and testament of Mary C. Cowan."

On February 11, 1931, the court entered its decree construing the will in accordance with its written opinion filed in the case and made a part of the record which we here set out:

"Richard Adams

vs.

"J. R. K. Cowan

"The verdict on the issue *devisavit vel non* leaves to be determined the extent which the will and codicil of November 15, 1927, modified the will of April, 1927.

"It is apparent from an examination of all of the testamentary papers that the testatrix intended the November papers to entirely supersede the April paper.

"1. They are complete in themselves, and, if effective, dispose of all of the testatrix estate which so far as the record shows is the same as that disposed of by the April will.

"2. The principal beneficiaries in both are the same: Richard Melton, Frank Bannister, Elizabeth Kent Adams, J. R. K. Cowan, Graham Kelly, 'charity' and Richard Adams.

"3. The beneficiaries of the main portions of the estate receive the benefit of the same portions.

"a. Richard Melton and Frank Bannister each receive a lot.

"b. J. R. K. Cowan and Elizabeth Kent Adams receive the 770 acre tract.

"c. R. P. Adams receives the 660 acre tract.

"4. Except for the devises of the two lots and the 660 acre tract which go to the same beneficiaries every disposition in the November papers is in conflict with the dispositions in the April will.

"These papers show, also, the very positive intention of the testatrix to revoke the residuary clause in the April will.

"1. They show her abiding intention to leave a portion of her large estate for charitable purposes.

"2. The residuary legatee in the April will is entirely omitted from the residuary clause in the November codicil. There also appears an intention to reduce the amount of property in the residuary estate and to dispose of it in an entirely different manner.

"3. The 660 acre tract which with other property would have pased to Adams by the residuary clause in the April will is specifically devised to him in the November will showing an intention not only to reduce his share, which is further shown by the devise of a life interest in one-half of it to Kelly, in the November codicil, but also that she did not intend that the residuary clause in the April will and the specific devise in the November will should both operate.

"The intention of the testatrix to revoke the residuary clause in the April will is so manifest from the testamentary papers themselves, as to overcome the presumption against intestacy. Nor do they show an intention to impose a trust on a previous absolute devise. The November codicil makes the 'proper channels of the Presbyterian Church' the trustee to administer the trust and not the residuary legatee in the April will. In this connection it may be noted that the rule of presumption against in-

testacy is sought to be invoked in favor of a collateral relative, a nephew, against an heir, her father.

"As to the 770 acre tract:

"The language in clause 3 of the codicil which not technical is clear. By it the testatrix intended her sister, Elizabeth Kent Adams, to have an equal portion, that is one-half of it. She gives her reason that it was in accordance with her mother's wishes. She further undertakes to make the portions equal by requiring her to assume its portion of the debt to which her brother was obligated for their father.

"I am therefore of the opinion.

"1. That the testatrix died intestate as to the property embraced in the residuary clause of the November codicil.

"2. That Mrs. Adams takes a one-half interest in the 770 acre tract subject to her assumption of any obligations which it should share by reason of responsibilities of J. R. K. Cowan for their father.

"A decree may be submitted in accordance with the foregoing opinion."

 It is conceded by all the parties in interest that clause 5 of the codicil to the November will is void for uncertainty. That this is so seems perfectly manifest, hence we will make no further mention of it.

 The question which is the subject of this contest and with which we are concerned is what becomes of the estate or property which the testatrix ineffectually undertook to dispose of by the said clause. It will be observed that the subject of the intended dispositive clause was the residuum of the testatrix's estate. It was the failure of a residuary devise, not a failure of a specific devise. It is urged by the petitioner, who is the nephew of the testatrix, and the residuary devisee in the April will, that there was no intestacy as to the provision intended by the testatrix to pass under the inoperative clause, but that having failed its subject goes to him because of the residuary provision in his favor in the April will; that the November will and

codicil was not a revocation of the April will, and it is argued, with some force, that it is illogical that a valid provision in a former valid will could be successfully attacked by the execution of a void codicil in a subsequent will. It, however, must be kept in mind that the subsequent will and codicil in the immediate case is a complete testamentary paper and disposes of the entire estate of the testatrix and differs from and is in conflict with every disposition of the former will except one and that relates to the two lots which under both wills go to two sons of a former servant of the testatrix. That the November will, executed seven months later than that of April and materially differing from it in the disposing provisions, was intended to entirely supersede the latter is a conclusion that is quite irresistible. If this is true, and we think it is, then of course its effect was to revoke the first will.

We are told that where persons attempt to make wills the law frowns upon partial intestacy and the presumption is strong against it. This is perfectly true, but a more controlling consideration in the eyes of the law is the discernment of the intention of the author of the will and the adoption of the construction which will effect that intention.

The opinion of the trial judge is so impressive and convincing on this phase of the matter as well as others that we adopt it as a part of our own.

A pivotal and strongly controverted point is the devolution of the property which was intended to be carried by the codicil which failed.

Much pertinent authority has been cited by the petitioner to sustain his contention that it falls into the residuum provision of the April will under which he claims, but we think the Virginia rule is the other way, that is, that Miss Cowan died intestate as to this portion of her estate and that under the statute it descended to her heirs at law. As to this Judge Harrison says in his admirable

work on Wills and Administration, vol. 1, at page 605, section 311:

"By the common law in the case of personalty and by statute in the case of realty, it may be generally stated that all lapsed and void legacies for which there is no testamentary or statutory course of devolution, pass under the residuary clause, if there be one; unless it is the residuary clause, itself, or a gift embraced therein, which is void or has lapsed. In the case of a lapsed or void gift in the residuary clause, the gift becomes intestate."

In the case of *Stone's Ex'r* v. *Nicholson et als.*, 27 Gratt. (68 Va.) 1, 8, it was said:

"When a specific devise or bequest fails from any cause, the subject of it goes to the residuary devisee or legatee, as the case may be, unless a different intention appears in the will. But when a residuary devise or bequest fails from any cause, the subject of it, to the extent of such failure, goes to the heirs or distributees at law of the testator."

This case is cited with approval in *Kent* v. *Kent*, 106 Va. 199, 55 S. E. 564, 566, and the above is quoted by Judge Keith in the opinion, and commenting upon it he said: "It is said that this was a *dictum*. Grant that it is so; it was the *dictum* of a distinguished judge, concurred in by the entire court, and is entitled to much respect."

In 18 Amer. & Eng. Enc. of Law, page 765, it is said:

"Where a residuary bequest or devise lapses or is void it goes to the heirs or next of kin of the testator, as in cases of intestacy, and the same is true where the lapse or invalidity is only as to one or more of several residuary legatees or devisees who are to take distributively; the share or shares of which the gift fails go to the testator's heirs or next of kin, and not to the other residuary legatees or devisees."

The above is quoted with approval in the *Kent* v. *Kent Case, supra.*

The petitioner attacks the jurisdiction of the trial

court in this case, suggesting that the issue was adjudicated by its former decree establishing the several papers as the will of the testatrix from which no appeal was had. As to this we have to say that that was a probate proceeding. In such a proceeding the construction of the will is not a question which is before the court. The construction of the will was not within the issues made by the pleadings. The case which he cites in support of his position, *Shultz* v. *Shultz, et als.,* 10 Gratt. (51 Va.) 375, 60 Am. Dec. 335, will be seen to have dealt with the question of the probate of the will and not its construction save as affecting its validity as a will.

We affirm the decree of the trial court.

*Affirmed.*